IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENWOOD DIVISION

| | |
|---|---|
| Marilyn Eason, | Case No.: |
| Plaintiff, | **COMPLAINT** |
| | Jury Trial Requested |
| v. | |
| Newberry College and President Maurice Scherrens, in his official capacity, | |
| Defendants. | |

## <u>INTRODUCTION</u>

Plaintiff Marilyn Eason, by and through her undersigned counsel, brings the Causes of Action of Race Discrimination/ Racially Hostile Work Environment and Retaliation pursuant to 42 U.S.C. Section 1981, as amended, Race Discrimination/ Racially Hostile Work Environment and Retaliation pursuant to Title VII of the Civil Rights Act of 1964, and Breach of Contract against Defendant Newberry College and its President, Defendant Maurice Scherrens, based on the following allegations.

## <u>ADMINISTRATIVE CHARGE</u>

1.   Plaintiff has exhausted all administrative remedies and prerequisites prior to filing this lawsuit, including timeliness, deferral, and all other jurisdictional requirements necessary for the maintenance of this Action, as described below:

   a.   Plaintiff timely filed a Charge with the Equal Employment Opportunity Commission ("EEOC") on October 23, 2024.

   b.   Plaintiff timely filed an Amended Charge with the Equal Employment Opportunity Commission ("EEOC") on November 1, 2024.

c.  Plaintiff received a Notice of Right to Sue from the EEOC on November 13, 2024.

d.  Plaintiff has timely filed this action within (90) days from the date on which she received her Notice of Right to Sue as described in Paragraph 1(c).

## JURISDICTION AND VENUE

2.  The Court has jurisdiction over this action pursuant to 28 U.S.C. Sections 1331 and 1343, and 42 U.S.C. Section 2000e (5), this being a proceeding to enforce rights and remedies secured under 42 U.S.C. Section 2000(e) et. seq. (Title VII of the Civil Rights Act of 1964 ("Title VII")), 42 U.S.C. Sec. 1981, and other Federal statutes. This Court also has pendant, ancillary, and supplementary jurisdiction over so much of this action as it is based on State law.

3.  Venue is proper in the Greenwood Division, because the Causes of Action arose in Newberry County, which is therein the Greenwood Division. The acts and practices complained of occurred in Newberry County and Newberry County is where Defendant Newberry College does business as a private Lutheran college and where the Individual Defendant is situated, does business, and may be found.

## PARTIES

4.  Plaintiff Marilyn Eason is a citizen of the United States and resides in Augusta, Georgia.

5.  Defendant Newberry College (hereinafter, "Defendant College") is a unit of the State of South Carolina with its principal location at 2100 College Street, Newberry, South Carolina 29108. Defendant is a private Lutheran college, as defined in S.C. Code Ann. § 59-1-110, which is formed and administered under the laws of South Carolina having its agents, employees, officers, and property in Newberry County, South Carolina. At all times relevant

to this Complaint, Defendant College was acting by and through its agents, servants, and employees.

6. Defendant Maurice Scherrens (individually referred to hereinafter, "Defendant Scherrens"), is the President of Defendant College. Upon information and belief, Defendant Scherrens resides in Newberry County, South Carolina.

## FACTS

7. Plaintiff is a 58-year-old African American Female who was hired as the College Registrar for Defendant College on March 27, 2023.

8. Plaintiff arrived at the College as Registrar with more than twenty-six years of service at previous Educational Institutions working as Registrar of Allen University for seventeen years and at Claflin University for nine years.

9. Plaintiff was hired by Dr. Sid Parrish who served as the Vice President for Institutional Effectiveness. During her time as College Registrar, Plaintiff received positive reports, evaluations, and feedback from Dr. Parrish on a consistent basis.

10. Plaintiff is the second African American Female employed in the position of Registrar with the Newberry College System.

11. Upon information and belief, the first African American Female Registrar resigned from her position under mysterious circumstances.

12. After being hired in March of 2023, a Caucasian subordinate Staff Member (Cindy Shealy, Assistant Registrar) stated to Plaintiff, "I don't want you to think that because you are Black that is the reason I am resigning". The statement by Ms. Shealy was both unprompted and unwarranted, though set the tone for the work environment that was yet to come Plaintiff's way.

13. Commencing in January of 2024, Plaintiff began to realize that she was being undermined by Defendant College's Administration in its equity treatment of cloaking errors and mistakes in the Jenzabar Student Information System made by her Caucasian Counterparts.

14. The Jenzabar Student Information System (SIS) is a cloud-based platform designed specifically for Higher Education Institutions, allowing them to manage all aspects of student data, from admissions and enrollment to academic performance, financial aid, and graduation, providing a comprehensive view of each student's journey within a single system.

15. Plaintiff notes that the Jenzabar System was fraught with software complications and was outdated, which required Defendant College to upgrade to the Jenzabar One System in March of 2024. Between March of 2024 until August 2024 the System continued to malfunction with errors.

16. The Collegis Contract Company, under the supervision of Dr. Parrish, failed to get the System fully operational and to present, currently the system is still not completely operational.

17. Therefore, Plaintiff had no control over the issues consistently experienced collegewide with the Jenzabar One System. However, the System errors were attributed to Plaintiff by Defendant College's Administration, as a way to pretextually place Plaintiff at fault in an attempt to fire Plaintiff on the basis of her Race.

18. Plaintiff reports to Administrators who are all Caucasian. Though issues with Jenxabar One and other issues such as disorganization and timeliness were attributed solely to Plaintiff, no acknowledgement was ever made of her Caucasian Administrators' contribution to the deficiencies in the operation of Defendant College.

19. On or about June 21, 2024, Sandy Scherrens, Dean of Enrollment Management and wife of Defendant Scherrens (White Female), at the direction of Dr. Parrish, directed the Caucasian Administrators to heavily scrutinize Plaintiff and another African American Staff Member, Demetrius Middleton, Associate Registrar, by way of documentation. Upon information and belief, this tactic was used as a means to pretextually terminate the two African Americans within Defendant College's Registrar's Office on the basis of their Race. In result, Plaintiff and Ms. Middleton were subjected to a Racially Hostile work environment and eventually, were both unjustly and unfairly terminated.

20. Upon information and belief, as witnessed by Plaintiff's Counterparts, Ms. Scherrens expressed to other Members of Defendant College's Faculty and Staff that she wanted to get rid of the African American Employees.

21. Consequently, Plaintiff's credentials and qualifications began to be questioned by her first supervisor Dr. Parrish (White Male) and, upon Mr. Parrish's transfer, by Dr. Beth Hinga (White Female).

22. The nature of the scrutiny of Plaintiff's competence as Registrar at Defendant College reveals that Plaintiff's alleged work deficiencies were used to mask the work deficiencies of Caucasian Staff, Directors, Faculties, and VPs in the College system who were supposed to be competent in the Jenzabar One Student Information System. The errors regarding input of student information related to degree trees, degree audits, and grade entry are attributable to these Caucasian Employees of Defendant College.

23. Plaintiff was confronted and accused of these failures being attributable to her directly, when in fact that was not the case. Under the supervision of Dr. Parrish, there was documented evidence that Dr. Parrish directed Plaintiff to refrain from calling out the errors of the

Caucasian Staff, Directors, Faculties, and VPs, and to instead be nice to them and simply say, "I've corrected your mistakes".

24. In or around June 2021, after becoming aware of the blatant Racial Discrimination, Plaintiff reported her experiences and issues to Ms. Nikki Brooks, Director of Human Resources, via an in-person meeting where Plaintiff provided supporting documentation. Furthermore, Plaintiff reported the issues to Dr. Beth Hinga, Vice President for Academic Affairs, during Plaintiff's weekly meetings with her in her office. Plaintiff also contacted Dr. Alethia Richardson, Vice President of Diversity and Inclusion on several occasions via telephone to inform her of the disparate treatment.

25. On June 26, 2024, Plaintiff emailed a Complaint of the unequal treatment to Ms. Brooks, Dr. Richardson, and Dr. Sid Parrish.

26. Moreover, in June 2024, after noticing the disparate treatment between herself and her Caucasian Counterparts, Plaintiff filed a Federal Complaint with the Equal Employment Opportunity Commission based on the Racial Discrimination she was experiencing in her role as College Registrar for Defendant College. On or about June 25, 2024, Plaintiff received a Right to Sue.

27. Subsequently, between July 10, 2024, and July 17, 2024, after creating a consistent trend of taking the blame for and correcting her Caucasian co-workers' mistakes, Dr. Parrish placed Plaintiff on a Performance Improvement Plan (PIP) for 'failure to maintain a desired level of performance".

28. Plaintiff was then threatened with termination pretextually on October 17, 2024, based upon Defendant College attributing the errors of Caucasian staff to Plaintiff's leadership and competence.

29. In an October 17, 2024, meeting, Plaintiff was directly threatened with immediate termination by Beth Hinga who tells Plaintiff "There is a general perception that you are not the right person for this job". Plaintiff was completely taken aback by this statement considering the positive reviews and evaluations she had previously received.

30. In the preceding days, Plaintiff was charged with training a new hire, Kristy Parker (White Female), on how to transition into her role while awaiting her termination.

31. Upon information and belief, Plaintiff believes that Defendant College's Administration decided to terminate Plaintiff's job, merely because of Plaintiff's Race.

32. In addition, Plaintiff, upon information and belief, witnessed Defendant College's Administration on October 23, 2024, conducting a meeting with the previous Registrar, Carol Bickley (White Female), and the previous (retired) Office Manager, Cindy Shealy (White Female), who on day one made the Racially insensitive comment towards Plaintiff.

33. Therefore, Plaintiff, after attempting to exhaust administrative challenges within Defendant College's System, had no choice but to conclude that she was victim of Race Discrimination, a Racially Hostile Work Environment, and a Victim of Retaliation because of her challenges to her Caucasian Supervisors that she was pretextually set up for termination all due to her Race.

34. On or about October 24, 2025, Plaintiff was informed by Defendant College that she would have to resign or be terminated. No valid reason was provided for this action taken by Defendant College.

35. On the same day, Plaintiff filed a Charge of Discrimination with the EEOC. Following, Defendant College was notified by email by Plaintiff's counsel of the Charge of Discrimination, and it was requested of Defendant College that no action be taken regarding

Plaintiff's job. Defendant College was also urged to protect Plaintiff's job during the pendency and investigation of her allegations. Additionally, it was requested of Defendant College that Plaintiff not become a Victim of Retaliation for the filing of the Charge protecting her rights under Title VII of the 1964 Civil Rights Act, as amended. The same notification was sent to Defendant College via US Mail.

36. After being notified of Plaintiff's Charge of Discrimination, Defendant College terminated Plaintiff on the following day, October 25, 2024, at 4:00 PM. There was no explanation given for Plaintiff's termination. Immediately after terminating Plaintiff, Defendant College removed Plaintiff's photograph from its website and replaced it with a photograph of the newly hired Caucasian Registrar, Kristy Parker. It is beneficial to note that the Registrar position opening was not posted at any point prior to or after Plaintiff's termination.

37. Plaintiff believed her termination was a direct result of and attributable to her filing Internal Complaints against Management within Defendant College and followed her seeking redress by filing an EEOC Complaint on Thursday, October 24, 2024.

38. On October 24, 2024, Defendant College was notified by US Mail and via email to Defendant Scherrens and Ms. Nikki Brooks, Director of Human Resources, about Plaintiff filing an EEOC Complaint. Consequently, Plaintiff was fired with no explanation provided on Friday, October 25, 2024.

39. Plaintiff asserts that Defendant College and Defendant Scherrens were on notice of the EEOC Charge and/or Plaintiff's intent to file an EEOC Charge and Retaliated against her for exercising her Federally Protected Rights under Title VII of the 1964 Civil Rights Act, as amended, and 42 U.S.C. Section 1981, based on her Race.

40. The actions of Defendant College's Supervisory Personnel were in direct violation of Defendant College's Personnel Policies Handbook, which prohibits Retaliation for any complaint raised by their Employees, Staff, Students, Faculty, and Administrative Personnel. Further, the Handbook states, "Newberry College will thoroughly, promptly, and impartially investigate any claim of retaliation. Any person found to have engaged in retaliatory conduct or taken retaliatory actions will be subject to discipline, up to and including termination".

41. Additionally, the actions of Defendant College's Supervisory Personnel were in direct violation of Defendant College's Equal Employment Opportunity Policy, which states "No person will be discriminated against in employment because of race, religion, color, gender, etc.".

42. Therefore, Plaintiff believes she is a victim of Race Discrimination and was subjected to a Racially Hostile Work Environment all in violation of Title VII of the 1964 Civil Rights Act, as amended, 42 U.S.C. Section 1981, and other State causes of action.

## FIRST CAUSE OF ACTION

### RACE DISCRIMINATION / RACIALLY HOSTILE WORK ENVIRONMENT IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

**(Against Defendant Newberry College and its President, Defendant Maurice Scherrens, in his official capacity.)**

43. Plaintiff reiterates each and every allegation in the previous paragraphs as if set forth verbatim herein.

44. Plaintiff asserts that Defendant College's Administration's daily pattern and practice of intimidation, harassment, bullying, and systematically undermining Plaintiff's authority

created a Racially Hostile Work Environment were a mere pretext for the Discrimination against Plaintiff based on her Race.

45. Defendant College was wanton, reckless, and intentional in its discrimination against the Plaintiff in failing to hold Caucasian Employees accountable for their errors and deficiencies and instead attributing the issues to Plaintiff. Furthermore, Defendant College failed to uphold its policies and procedures regarding its Administration, allowing Caucasian Employees, in their efforts to terminate Plaintiff based on her Race, to inappropriately demean, disparage, and discriminate against Plaintiff.

46. In failing to protect Plaintiff from Race Discrimination, bullying or harassment, Defendant College acted with malice or reckless indifference to the Federally Protected Rights set out under Title VII of Civil Rights Act of 1964, as amended.

47. Defendant College violated Title VII of Civil Rights Act of 1964 and 42 U.S.C. Section 1981, by perpetuating Race Discrimination, Bullying, and Harassment in the workplace which ultimately caused Plaintiff's termination.

48. Defendant College's wrongful actions as set forth aforesaid constituted a Racially Hostile Work Environment for Plaintiff. Defendant College violated Title VII of the Civil Rights Act of 1964, as amended, by allowing a Hostile Work Environment to exist regarding Race Discrimination in the workplace.

49. The aforesaid conduct of Defendant College, its agents, servants, and Board of Trustees violates laws against Harassment and was, in fact, Harassment in nature and in violation of Title VII of Civil Rights Act of 1964, as amended.

50. As a direct and proximate result of Defendant College's Discrimination on the basis of Race, Plaintiff has suffered a loss of wages, benefits, and employment opportunities.

51. Defendant College's Employment Discrimination of Plaintiff has caused, continues to cause, and will cause Plaintiff to suffer substantial damages for pecuniary losses, embarrassment, humiliation, public scrutiny, pain and suffering, mental anguish, loss of enjoyment of life, and other nonpecuniary losses.

52. Plaintiff is entitled to injunctive relief and/or civil damages from Defendant College as a result of the Employment Discrimination as alleged above.

53. Due to the acts of Defendant College, its agents and employees, Plaintiff is entitled to back wages, plus interest, payment for lost benefits, and reinstatement of benefits and front pay.

## SECOND CAUSE OF ACTION
### *RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964*
**(Against Defendant Newberry College and its President, Defendant Maurice Scherrens, in his official capacity.)**

54. Plaintiff reiterates each and every allegation in the previous paragraphs as if set forth verbatim herein.

55. Plaintiff repeatedly objected to and protested the violations of her Federally Protected Rights within the Defendant College's administrative structure and later, to the Equal Employment Opportunity Commission.

56. After Plaintiff sought to seek relief from Defendant College's discriminatory practices, to include but not limited to consulting with Human Resources and other Members of Defendant College's Administration through the chain-of-command, Defendant College retaliated against her by a continuance of harassment, by not addressing her complaints, and ultimately, by terminating her.

57. Accordingly, Plaintiff is entitled to compensatory and punitive damages in the nature of the value of her lost wages and benefits, front pay, together with interest thereon, as well as liquidated damages, and her reasonable attorney's fees for the bringing of this action.

## **THIRD CAUSE OF ACTION**

### *RACE DISCRIMINATION / RACIALLY HOSTILE WORK ENVIRONMENT IN VIOLATION OF 42 U.S.C. SECTION 1981*

**(Against Defendant Newberry College and its President, Defendant Maurice Scherrens, in his official capacity.)**

58. Plaintiff reiterates each and every allegation contained in the previous paragraphs as if set forth verbatim herein.

59. Plaintiff is a member of a protected class on the basis of her race (African American).

60. Plaintiff was subjected to disparate treatment and a hostile work environment on the basis of her race due to Defendant and Defendant's agents racially hostile treatment towards him/her in violation of 42 USC § 1981.

61. Defendants, by and through their agents, began a pattern and practice of targeting Plaintiff through systemic Race-based Harassment and disregard of her complaints of Race Discrimination and Harassment. Plaintiff's similarly-situated Caucasian colleagues were not subjected to such treatment, and Defendants made no efforts to protect Plaintiff from Harassment.

62. Plaintiff alleges that this Racially Hostile Treatment on the job was pretextual, as Defendants made promises to Plaintiff that Plaintiff's protected complaints would be addressed.

63. Plaintiff alleges that Defendants, through their agents, initiated discriminatory and hostile practices against Plaintiff which were reckless, wanton, and intentional Race Discrimination based on her race to include the following:

    a. Defendants allowed their Administrators to perpetuate Race-based discrimination, harassment, and a Race-based Hostile Work Environment against Plaintiff by refusing to address Plaintiff's protected complaints regarding disparate treatment in the workplace.

    b. Defendants' allowed Plaintiff to be Racially Harassed and Discriminated against to the exclusion of her similarly-situated Caucasian colleagues, who were not subject to the frequent, unmerited ethics complaints, daily harassment, and discrimination Plaintiff endured.

    c. Defendants further allowed Plaintiff to be Racially Harassed and Discriminated against through Defendants' Human Resources Department, by failing to properly address or investigate Plaintiff's protected complaints, and by further initiating a pretextual investigation in order to justify Plaintiff's wrongful termination.

64. Defendants finally Racially Harassed and Discriminated against Plaintiff by terminating her on the basis of a pretextual investigation, in order to punish and retaliate against Plaintiff for reporting the Racially Motivated Harassment.

## FOURTH CAUSE OF ACTION

### *RETALIATION IN VIOLATION OF 42 U.S.C. SECTION 1981*

**(Against Defendant Newberry College and its President, Defendant Maurice Scherrens, in his official capacity.)**

65. Plaintiff reiterates each and every allegation contained in the preceding paragraphs as if set forth verbatim herein.

66. Plaintiff was repeatedly subjected to and protested the violations of her Federally Protected Rights within the Defendants' administrative structure all to no avail as such complaints merely subjected Plaintiff to being mistreated in a retaliatory manner and to a continuance of unlawful racial harassment and retaliation as stated above.

67. After reporting such acts, Plaintiff was unjustly blamed for issues at Defendant College that were out of her control, and eventually terminated with no just cause provided.

68. Due to the retaliatory acts of the Defendants, their agents and employees, Plaintiff is entitled to injunctive relief and/or civil damages, back wages, plus interest, payment for lost wages, and punitive damages.

69. Accordingly, Plaintiff is entitled to compensatory and punitive damages as a result thereof as Plaintiff has suffered damages in the form of actual, compensatory, consequential, physical, mental, emotional, and other damages. Plaintiff also believes that a reasonable amount of punitive damages should be levied against Defendants on account of their unlawful treatment of Plaintiff.

## FIFTH CAUSE OF ACTION

### *BREACH OF CONTRACT*

**(Against Defendant Newberry College)**

70. Plaintiff reiterates each and every allegation contained in the preceding paragraphs as if set forth verbatim herein.

71. Upon information and belief, Defendants maintain a Personnel Policies Handbook of policies and procedures, including, but not limited to, a Policy against Retaliation, an Equal Employment Opportunity Policy, and other policies and procedures regarding conduct in the workplace, anti-discrimination, harassment, investigation, and others which applied to Plaintiff.

72. Plaintiff relied on Defendants' reassurance through its agents that Defendant would act pursuant to Defendant's policies and procedures with respect to conduct in the workplace, anti-discrimination, investigation of reported violations, harassment, and other workplace policies and procedures, including Defendants' Code of Business Conduct and Ethics and Human Rights Policy.

73. Plaintiff performed her job duties with due diligence. However, Defendants, through their agents, unjustifiably failed to perform their contractual duties by Racially Discriminating against and Racially Harassing Plaintiff, failing to protect Plaintiff from the retaliatory actions of their agents, and Retaliating against Plaintiff due to her protected complaints as stated more fully above.

74. Defendants also failed to fully and completely investigate Plaintiff's protected complaints in accordance with Defendants' own Personnel Policies Handbook.

75. All of these actions violate the contractual anti-discrimination provisions within Defendants' Personnel Policies Handbook (contract), its anti-discrimination and anti-harassment policies, workplace conduct policy, and other contractual policies and procedures of the Defendants, when they failed to treat Plaintiff equally to their Caucasian Employees as stated more fully above.

76. Defendants, and their agents, had a responsibility to ensure that Plaintiff would not be subjected to race discrimination. Defendants, through their agents, instead chose to do such, retaliated against Plaintiff when Plaintiff complained within its management structure pursuant to their own policies and procedures, and failed to treat Plaintiff similarly to her Caucasian counterparts under like scenarios, all in violation of the contractual guarantees provided to Plaintiff by Defendants in the employment handbook.

77. Defendants' conduct, by and through their agents, was done in bad faith and breached the implied covenant of good faith and fair dealings that is implied in the employment contract.

78. As a result of Defendants' breach of contract, Plaintiff has suffered actual, compensatory, physical, mental, emotional and consequential damages stemming from the breach and other such damages as are allowable by law.

## JURY TRIAL REQUESTED

79. Plaintiff requests a jury trial.

## PRAYER FOR RELIEF

80. **WHEREFORE**, Plaintiff prays that this Honorable Court declares that Defendants' actions complained of herein violated the rights guaranteed to Plaintiff and issue its judgment:

     a. Declaring the actions complained of herein illegal;

     b. In favor of Plaintiff and against Individual Defendants for all causes of actions herein alleged in an amount which is fair, just and reasonable, and for actual, compensatory, special, and punitive damages;

     c. In favor of Plaintiff and against Defendant College and Defendant Scherrens for all causes of actions in an amount which is fair, just and reasonable, and for actual and compensatory damages;

d.  Issuing an injunction enjoining Defendants, their agents, employees, successors, attorneys and those acting in concert or participation with Defendants, and at their direction from engaging in the unlawful practices set forth herein and any other employment practices shown to be in violation of Title VII of the Civil Rights Act of 1964 (Race Discrimination/ Racially Hostile Work Environment / Retaliation), 42 U.S.C. Section 1981 (Race Discrimination/ Racially Hostile Work Environment / Retaliation), Breach of Contract, and the common laws of the State of South Carolina.

e.  Awarding Plaintiff actual and compensatory damages for each Cause of Action contained herein as appropriate, which the jury should find appropriate as a result of Defendants' unlawful discriminatory actions taken as a result of Plaintiff's race and other pled causes of action, including: mental anguish, pain and suffering, harm to Plaintiff's economic opportunities (present and future), any back pay, front pay and future earnings with cost of living adjustments, prejudgment interest, fringe benefits and retirement benefits;

f.  Awarding Plaintiff her costs and expenses in this action, including reasonable attorney's fees, and other litigation expenses; and

g.  Granting such other and further relief as may be just and necessary to afford complete relief to the Plaintiff as this Court may deem just and proper.

Respectfully Submitted,

s/Donald Gist
Donald Gist (13098)
***GIST LAW FIRM, P.A.***
4400 North Main Street
Columbia, South Carolina 29230
Tel. (803) 771-8007
Fax (803) 771-0063
Email: dtommygist@yahoo.com

***Attorney for Plaintiff***

February 10, 2025